RODGERS, Presiding Justice.
This case came to this Court on appeal from a judgment of the Circuit Court of Harrison County, Mississippi, in which a judgment of the County Court, in favor of appellee, was affirmed. The County Court rendered a judgment in favor of Susie Smith for the sum of two thousand dollars ($2,000.00), the principal amount alleged to have been due to her as beneficiary under an insurance policy issued to her deceased husband during his lifetime.
The record reveals that Curtis S. Smith was employed by McDaniel and Sons Funeral Home at the time he purchased a life insurance policy from Interstate Life and Accident Insurance Company. His application for the original policy, No. 19636646 was for the sum of one thousand dollars ($1,000.00). The insured Curtis S. Smith stated that he was forty-five (45) years old at the date of the application. He stated that he was born January 9, 1919. The insurance company issued the policy requested and in the body of the policy the insurance company agreed that the insured could purchase additional insurance from the company under the following conditions :
“If your issue age is 45 years or less, we will issue to you without evidence of in-surability a Whole Life policy on the second anniversary of this policy for twice the face amount of this policy. The new policy shall be limited to a maximum of $3,000. In addition, if your issue age is 35 years or less, we will issue to you without evidence of insurability a Whole Life policy on the fifth anniversary of this policy for the face amount of this policy. The new policy shall be limited to a maximum of $1,500.
“To obtain this additional insurance an application and full first premium must be received by us at our Home Office 90 days or less before the specified anniversary date of this policy and this policy must be in full force with no premiums in default on the specified anniversary date.”
Thereafter, on September 5, 1966, the insurance company automatically issued a second policy, No. 20975343, to the insured for the face amount of two thousand dollars ($2,000.00) without requiring the insured to advance the first premium mentioned in the “Option to Purchase.” The written application for the original policy was not attached to either of the policies. The insured died on February 10, 1968, at a time when the premiums had been fully paid on both policies. The undertaker who received the body at the Veterans Administration Hospital was informed by some unknown person that the deceased was born on January 9, 1918.
The undertaker assisted Susie Smith in preparing the proof of death claim under the policies for the insurance company, and in so doing he used the information obtained at the Veterans Hospital. However, the testimony shows that neither the widow nor any members of their respective families knew the exact date of the insured’s birth. The proof of death form had printed at the bottom of the form that: “The foregoing information is complete and true to the best of my knowledge and belief.” The widow, beneficiary, signed the proof and mailed it to the insurance company.
Thereafter, the insurance company’s representative went to the widow and advised her he had come to pay her off, but requested her to sign two papers. These two papers turned out to be two applications to change the two policies so as to show that the insured was born January 9, 1918. The agent gave the widow two checks, one for the sum of one thousand dollars ($1,000.00) and the other for the sum of one hundred eight-one dollars and fifty cents ($181.50). The smaller check was returned to the insurance company by the widow.
The insurance company now contends that the widow is estopped to claim pay *455 ment under the terms of the second policy because of these two applications to change the date of birth mentioned in the application. The company also claims that the death certificate filed with the State Registrar of Vital Statistics is conclusive as to the date of the birth of the deceased Curtis Smith.
The proof of death had attached thereto a certified copy of the death certificate obtained from the Registrar of Vital Statistics. The funeral director, W. B. McDaniel, typed on the bottom of the death certificate the following:
“Attention; Please
To the best of my knowledge, This Army Record is the Truest to his Correct Age. We don’t have a birth Certificate.
w. b. McDaniel & son
FUNERAL SERVICE
By /s/ W. B. McDaniel”
The insurance company contends (1) that the deceased misstated his age; (2) that appellant has the right to controvert the claim even though no application was attached to the policy, for the reason that the policy itself sets forth the age requirement; and 13) that the policy is void ab initio because it would not have been issued had the deceased not misstated his age on his original application for insurance.
It is accepted as a general rule of insurance law that the insurer has the burden of proof to establish an affirmative defense relied upon to work a forfeiture of the insurance contract. Davis v. Gulf States Insurance Co., 168 Miss. 161, 151 So. 167 (1933); Jefferson Standard Life Insurance Co. v. Jefcoats, 164 Miss. 659, 143 So. 842 (1932); Massachusetts Protective Assn. v. Cranford, 137 Miss. 876, 102 So. 171 (1924); Grangers’ Life Insurance Co. v. Brown, 57 Miss. 308 (1879); Fidelity & Casualty Co. of New York v. Love, 111 F. 773 (5th Cir. 1901); Cotton v. Fidelity & Casualty Co., 41 F. 506 (C.C. 1890); Coburn v. Travelers’ Insurance Co., 145 Mass. 226, 13 N.E. 604 (1887); Chambers v. Northwestern Mutual Life Insurance Co., 64 Minn. 495, 67 N.W. 367 (1896); Anno. 123 A.L.R. 1409 (1939).
The burden of proving the falsity of the representations made by the insured as to his age is upon the insurance company. See the many cases collected in 1 A. L.R. 469 (1919) and 160 A.L.R. 311 (1946); Afro-American Sons & Daughters v. Webster, 172 Miss. 602, 161 So. 318 (1935).
Moreover, the testimony that the insured falsified his age in order to obtain insurance must be positive, clear, and convincing to result in a forfeiture of the policy. Fidelity & Casualty Co. v. Meyer, 106 Ark. 91, 152 S.W. 995 (1912); McArthur v. Home Life Assn., 73 Iowa 336, 35 N.W. 430 (1887); Andrus v. Business Men’s Accident Assn. of America, 283 Mo. 442, 223 S.W. 70, 13 A.L.R. 779 (1920); Anno. 1 A.L.R. 469 (1919); Anno. 81 A.L.R. 852 (1932); Anno. 117 A.L.R. 795 (1938).
The insurance company contends that the proof offered by it is sufficient to meet the burden required of it by law. It says that it received a proof of death, prepared by appellee’s witness and signed by appellee. The record shows, however, that this proof has written on the bottom of the certificate the words above set out wherein the beneficiary expressly states the information was “ . . . to the best of my [her] knowledge . . . we do not have a birth certificate.”
The insurance company then argues that it also offered in evidence two signed requests for policy changes signed by the beneficiary requesting the insurer to change the age of the insured in both policies of insurance. The beneficiary explains this by saying that she signed some papers when an agent brought her the checks. She did not think they were filled *456 out, but that when he handed her the checks she found that one of the checks was not for the amount due so she returned it to the company. The insurance agent was not introduced to deny the statement of the beneficiary, appellee, as to how she was induced to sign the application for a change of the age of the insured so as to void the policy.
The insurance company then argues that since it introduced into evidence a certified copy of the record of the death of the insured, in which it is stated that insured was born January 9, 1918, it made out a prima facie case showing the age of the insured to be above forty-five (45) years at the time the first policy was issued. It is, therefore, contended that its prima facie case must be recognized and sustained because the beneficiary offered no evidence to contradict the evidence offered by the insurance company. This argument is based upon the language of Section 7064, Mississippi Code 1942 Annotated (Supp.1971) as follows:
“Any copy of the records of birth, sickness or death, when properly certified to by the state registrar of vital statistics, to be a true copy thereof, shall be prima facie in all courts and places of the facts therein stated. Provided, however, that a facsimile signature of the registrar shall be sufficient for certification when the certificate shall have impressed thereon the seal of the Mississippi Department of Public Health.”
In the case of Clegg v. Johnson, 164 Miss. 198, 143 So. 848 (1932), this Court pointed out that at that time the bureau of vital statistics had no authority under the law to keep and certify a record of the age of a person at the time of his death, and that a death certificate was not admissible in evidence to establish the age of the deceased. Appellant urges that Clegg, supra, is not applicable because the birth date was not stated in the death certificate.
We are convinced that Clegg, supra, is applicable here for two reasons. First—we commented on this issue in the case of Thompson v. State, 220 Miss. 200, 70 So.2d 341 (1954), in which we quoted from Massachusetts Protective Assn. v. Cranford, 137 Miss. 876, 102 So. 171, 173 (1924) as follows:
“ . . . ‘We do not think the statute [now Section 7064] was intended to authorize certificates to be introduced as prima facie evidence except as to the prime physical cause of death . . .’ It was pointed out that, under the authorized purpose, the certificate should have shown the cause of death as gunshot wound, ‘and not whether the wound was inflicted by any certain person, by assassination, by accident, or by intentional self-destruction.’ Consequently, the objection should have been sustained. . . .” 220 Miss. at 205-206, 70 So.2d at 342.
In Flowers v. State, 243 So.2d 564, 565 (Miss.1971) we limited the use of death certificates to “physical cause of death.”
Second—a death certificate stating the fact of death and immediate cause of death is ordinarily primary evidence within the knowledge of the person making the report. On the other hand, to put the date of one’s birth on a death certificate is obviously hearsay evidence. Moreover, a death certificate is to report a death, and a birth certificate is to report a birth. A death certificate is admissible to show character of sickness or cause of death. Life & Casualty Insurance Co. v. Walters, 180 Miss. 384, 177 So. 47 (1937).
We are of the opinion that the introduction of the death certificate in the instant case was not sufficient to establish the date of the birth of the deceased, insured.
If, however, we assumed the death certificate to be sufficient to make out a *457 prima facie case in favor of the insurance company, we would still be confronted by the fact that the insured himself twice declared his age to be less than forty-five (45) at the time he made application for insurance. First, when he made application for insurance and again when he executed a “Guaranteed Insurance Beneficiary Designation.” If anyone knew the age of the applicant it was certainly he.
It has been said that death certificates are not conclusive, but may be overcome by other evidence tending to explain, contradict, impair or relieve against adverse statements or admissions therein as that they were the result of inadvertent mistakes or misinformation and were erroneous. Anno. 93 A.L.R. 1342 (1934).
It has been pointed out that where there is no real proof to the contrary, a presumption exists that the applicant has truly stated his age. See the many cases collected in 160 A.L.R. 310 (1946); 46 C. J.S. Insurance § 1319, p. 424 (1946).
Moreover, where the evidence is conflicting as to the falsity of the statement of the age of the applicant, the issue is for the jury. 1 A.L.R. 469 (1919); Life and Casualty Insurance Co. v. Parker, 173 Miss. 180, 161 So. 465 (1935).
The trial court determined from the testimony that the insurance company was liable to the beneficiary under the terms of the insurance policy, and we are of the opinion that the judgment of the County Court and the judgment of the Circuit Court are based upon substantial evidence and should be affirmed.
Affirmed.
JONES, PATTERSON, INZER and ROBERTSON, JJ„ concur.