BRADY, Justice:
This is an appeal from a judgment of the Circuit Court of Jones County, Mississippi, wherein the appellant was convicted of manslaughter and sentenced to seventeen years in the Mississippi State Penitentiary.
On March 21, 1970, at approximately midnight, the appellant shot and killed one Harold Dotson Hardy. The record discloses that on that evening the appellant, along with Hardy and several other people, had engaged in several games of dominoes and cards at the home of a Mr. and Mrs. Sullivan who lived in Apartment No. 22 of the Air Base Apartments in Laurel, Mississippi. The deceased, Hardy, lived in Apartment No. 23 of the Air Base Apartments, and the appellant, Nicholson, lived in Apartment No. 25 thereof. Though the testimony is conflicting, the record further discloses that all of the parties had been drinking during the afternoon and evening. The deceased had boasted as to having fought three men simultaneously and having cut the liver of one of his adversaries with a knife.
Approximately thirty minutes prior to the shooting, the deceased and the appellant entered into an argument over a can of beer, which resulted when appellant swapped his hot can of beer for the freshly opened cold can of the deceased. Shortly thereafter the deceased and his wife left the Sullivan apartment, but as Hardy was leaving he told the appellant that if he came outside the Sullivan door the deceased would either kill him or, in substance, whip him. The appellant waited some three to five minutes during which time the deceased and his wife went home and used the rest room of their apartment, No. 23. The appellant then borrowed a Remington 22-automatic rifle owned by Mr. Sullivan and proceeded out the front door of the apartment in the direction of his own apartment which necessitated his passing in front of the deceased’s apartment.
The deceased came out on the front porch of his apartment and, upon seeing the appellant, jumped off the porch and proceeded toward the appellant. The appellant testified that the deceased said, “I told you I’d kill you if you came out that door,” and that he told the deceased to stop, “don’t come on me no further, go back,” but that the deceased continued to come forward with his hand in his pocket, stating, “you won’t shoot me.” The deceased advanced to a point near the front of a car parked in front of Apartment No. 22 and appellant retreated several steps to the rear of the same car. Thereupon the appellant discharged the rifle from the hip with the result that the 22-bullet struck the deceased in the chest and penetrated the aorta artery, lodging in the spine, and causing the deceased to bleed to death. Mrs. Sullivan, who had left her apartment after the gun had been fired, then took the rifle away from the appellant. The entire group waited until Deputy Sheriff Bill Brownlee arrived and placed under arrest the appellant whom Mrs. Harold Dotson Hardy accused of shooting her husband.
Deputy Sheriff Brownlee testified that he first told appellant of his constitutional rights as set out in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and later he read the constitutional rights to him as set forth on the “Miranda card”.and took him to the sheriff’s office in the courthouse annex. Deputy Sheriff Brownlee testified that on the way to the courthouse the appellant *554 kept saying that he did not kill the man. The deputy sheriff further testified that the appellant asked him, "Why don’t you get that long-haired fellow out of bed in Apartment 22 — or in that apartment, that he is the man that killed Hardy.” At the courthouse the deputy sheriff, as stated above, read the constitutional rights to the appellant and wrote the following statement from the appellant, which he stated the appellant had made. The appellant did not sign the statement and refused to discuss the matter further until he had a lawyer.
March 21st 200 A. M.
Floyd Lamar Nicholson, me, Benny Hugh Sullivan, & Shot man’s wife and the man that is shot were sitting at the table playing Dominoes, Jimmy Lee was Sitting there playing with us.
The Shot man’s wife left & Then Harold Hardy left & Came back to Benny Hugh Sullivan app. and Started up on the steps and told Benny Hugh Sullivan I am going to whip your ass.
Sullivan Said, quick as I get my Gun I am going to shoot you. Benny Hugh Sullivan went to his bed room and went out the door I heard a Gun Shot. Benny Hugh Sullivan then run and undressed and got in Bed.
Benny Hugh Sullivan Shot the Harold Dotson Hardy.
This unsigned statement, somewhat inconsistent with appellant’s subsequent claim of self-defense, was introduced in evidence upon the testimony of Deputy Sheriff Bill Brownlee. The appellant testified in his own behalf and stated in substance that he was scared of the deceased, feared that the deceased might kill him or do him great bodily harm, and that he shot the deceased to protect his own life. This statement, together with all the testimony offered in evidence, was submitted to the jury which returned the verdict, “We, the jury, find the defendant guilty of manslaughter.”
The trial judge sentenced the appellant to a term of seventeen years in the Mississippi State Penitentiary and from that judgment this appeal is taken.
Numerous errors are assigned, but we will consider only those essential to dispose of this cause and which should not be committed again on a retrial of this case. We have read and considered carefully the excellent briefs filed in this appeal together with the transcript of the pleadings and evidence. We are compelled to conclude that the basic “prerequisites to the admissibility of any statement” set forth in Miranda v. Arizona, supra, were met by the state before any discussion was held between Deputy Sheriff Brownlee and the appellant. The record discloses that the appellant knowingly, intelligently and willfully waived his constitutional rights in talking with the deputy sheriff about the shooting. Moreover, he did not confess in any way to shooting the deceased but, to the contrary, denied firing the shot. He was adequately advised of his constitutional rights and subsequent to his first discussions decided he would not talk about the matter any further until he had a lawyer.
There is no merit in appellant’s contention that the verdict of the jury is so contrary to the overwhelming weight of the evidence as to evince bias and prejudice on the part of the jury. The evidence offered by the state, if believed by the jury, is sufficient to justify the jury’s verdict of manslaughter. However, this cause must be reversed because of two serious errors, first, the granting to the state of the following “at the very time” instruction:
The Court instructs the Jury for the State of Mississippi that the law tolerates no excuses and accepts no justification for the taking of human life upon the plea of self defense, unless it be reasonably necessary to save the life of the Defendant or save the Defendant from great bodily harm at the very time of the fatal shot. And in this case, if you believe from the evidence *555 beyond a reasonable doubt that the Defendant, FLOYD LAMAR NICHOLSON, shot and killed Harold D. Hardy at a time when he was not in any immediate danger, real or apparent, of losing his life or suffering great bodily harm at the hands of the deceased, Harold D. Hardy, then the Defendant, FLOYD LAMAR NICHOLSON, is guilty of murder if he acted of his malice aforethought. (Emphasis added.)
This Court has heretofore held that this erroneous instruction does not accurately instruct the jury of the rule of law insofar as criminal intent is concerned. We have condemned the use of this instruction in the following cases: Dobbins v. State, 207 So.2d 96 (Miss. 1968); Davis v. State, 220 Miss. 818, 72 So.2d 172 (1954); Johnson v. State, 46 So.2d 924 (Miss. 1950); Irby v. State, 186 Miss. 161, 185 So. 812 (1939); and Vance v. State, 182 Miss. 840, 183 So. 280 (1938). By asking for and obtaining this instruction the state was able to advise the jury erroneously as to the applicable rule of law which, under the facts of this case, is reversible error.
Second, the lower court erred in refusing the appellant the right to put on surrebuttal witnesses. The rule is well settled in this state that where rebuttal evidence is introduced, surrebuttal should be allowed, particularly where to fail to do so would be prejudicial. Riley v. State, 248 Miss. 177, 157 So.2d 381 (1963); Clark v. State, 181 Miss. 455, 180 So. 602 (1938); and Roney v. State, 167 Miss. 827, 150 So. 774 (1933).
This was a hard fought case and is true, but melancholy, proof that, “Wine is a mocker, strong drink is raging: and whosoever is deceived thereby is not wise.” (Proverbs 20:1.)
For the foregoing reasons the cause is reversed and remanded.
Reversed and remanded.
ETHRIDGE, C. J., GILLESPIE, P. J., and RODGERS and SMITH, JJ., concur.